Argued December 10, 1969, reversed and remanded
July 22, 1970

ROEHR, *Respondent, v.* PITTMAN,
*Appellant.*
472 P2d 278

*James Eickelberg*, Corvallis, argued the cause and filed briefs for appellant.

*Frederic P. Roehr*, Portland, argued the cause for respondent executor. With him on the brief were Vergeer, Samuels, Cavanaugh & Roehr, Portland.

Before PERRY,* Chief Justice, and SLOAN, O'CONNELL, DENECKE and HOLMAN, Justices.

O'CONNELL, C.J.

This is a declaratory judgment proceeding in which the parties seek to determine the ownership of a savings account in the defendant bank.

The question presented is whether the balance in a joint savings account became the property of the surviving joint depositor or constituted an asset of the estate of the other joint depositor.

The decedent, Helen Hosken, and her daughter, Ruth Pittman, executed a signature card for a joint

---

* Perry, C. J., retired June 1, 1970.

checking account and a signature card for a joint savings account. Each signature card provided, among other things, that upon the death of one of the joint depositors the balance would belong to the survivor. Ruth Pittman contributed nothing to either account.

Helen Hosken died. At the time of her death the balance in the checking account was $123.57 and the balance in the savings account was $4,192.49. Defendant Ruth Pittman claims the balance in the savings account under the survivorship provision of the signature card. She makes no claim to the balance in the checking account.

Plaintiff, the executor of the estate of Helen Hosken, contends that Helen Hosken effectively disposed of the balance of the savings account in favor of others and thus defeated Ruth Pittman's survivorship interest.

■ During the joint lives of Helen Hosken and Ruth Pittman, the latter was a trustee of a power to withdraw from the account for the benefit of Helen Hosken. See *Greenwood v. Beeson,* 253 Or 315, 454 P2d 633 (1968). During the joint lives of the depositors, Ruth Pittman had a contingent right of survivorship, subject to being defeated or diminished by Helen Hosken's withdrawal or disposition of all or part of the fund.

The trial court held that the intention to defeat Ruth Pittman's survivorship interest was manifested by the terms of Helen Hosken's will. The will did not make any disposition of the savings account. The checking account was disposed of as follows:

> "THIRD, I hereby declare that I am the owner of a certain checking account with deposits in the U. S. Nat'l. Bk., Hollywood Br., in which, for the

purposes of convenience, I have made my daughter, Ruth Pittman a joint holder. The money in said account is mine, and does not constitute a gift to Ruth Pittman, except as hereinafter otherwise appears.

"It is my Will, and I direct that from the funds remaining in said account insofar as possible, all of the expenses, including the expenses of my last illness and funeral expenses shall first be paid. That thereafter, insofar as possible from monies in said account, there shall be paid all charges against my estate in the nature of taxes, and the cost of probate, and I direct that my executor make these payments as soon as practical after my decease.

"* * * * *

"FIFTH, In the event any funds remain from the balance of my checking account after the charges against the account which I have hereinabove enumerated have been paid and discharged, then in such event I hereby give, grant and bequeath the balance of said funds to Ruth Pittman, to be used by her to assist her son, Douglas, in obtaining a higher education, said fund to be used by her at her sole discretion, and without accountability to anyone."

At the time the will was executed the checking account had a balance of only $510.08; the savings account had a balance of $4,150.99. At the time the will was prepared Mrs. Hosken's attorney informed her of the costs incident to probate which, of course, would far exceed the amount in the checking account and would leave no residue to provide funds for the educational trust intended for Douglas Pittman. If the will had disposed of the savings, there would have been a residue to fund the educational trust.

It is plaintiff's theory that the will failed to dispose of the savings account as a result of the error of the

draftsman of the will. Testatrix's attorney, who drew the will, testified:

"I think that that's more than likely a scrivener's error at the time. See, now, I can't tell you whether she mentioned more than one account at the time. She said the money in the bank, the money in the United States National Bank. This is what she said, and in my original notes, which I took when she was there, I didn't have the name of the bank, but she had told me she had money in the bank and in a joint account or in joint accounts, one way or the other."

The conference notes made by the attorney preparatory to drafting the will contained the following item: "Balance in bank. Doug Pittman—for college expenses." The trial court concluded that in light of the attorney's testimony "we must reach the conclusion that the savings account was the only bequest that could carry out the purpose and intention of the testatrix." The trial court continued, as follows:

"The Court is of the opinion that this account must be treated as a residuary bequest and that the contract presumption of the joint saving account belonging to the survivor has been overcome. The Court thus finds that the savings account is controlled by the will and should be treated by the estate as directed by the testatrix."

■■ It is eminently clear that the term "savings account" cannot be added to or be substituted for the term "checking account" in Mrs. Hosken's will. When there is no ambiguity in the terms of the will itself, extrinsic evidence showing a contrary intent of the testator is not admissible.① Therefore, the will in this

---

① "Another way of stating the rule is that when the will is unambiguous, its language is conclusive and exclusive evidence of

case did not operate to dispose of Mrs. Hosken's interest in the savings account. Nor was the account disposed of by her statements made to her attorney at the time the will was being prepared. Her statements at that time cannot be regarded as evidencing an intention to make an inter vivos transfer of the account. Her intention was to make a testamentary disposition of the account and it was ineffective because it was unattested.

It could be argued that the extrinsic evidence showing an intent to dispose of the account, even though abortive, indicates an intent to revoke the survivorship interest of Ruth Pittman created by the execution of the signature card and therefore the savings account passes intestate or falls into the general residuary clause of the will.

We do not think that the evidence indicates that Mrs. Hosken would have intended the survivorship gift to Ruth Pittman to be revoked if the will was ineffective to dispose of the account.

The decree of the trial court is reversed and the cause is remanded with directions to dispose of the funds in the savings account consistent with this opinion.

the testator's intent." 4 Page on Wills, § 32.11 at 284 (Bowe-Parker rev 1961); 4 Page, supra § 30.4 at p. 21, § 32.9 at 266-270; In re Swanson's Estate, 231 Or 405, 373 P2d 422 (1962); In re Howe's Estate, 190 Or 592, 227 P2d 827 (1951). Fields v. Fields, 139 Or 41, 3 P2d 771, 7 P2d 975 (1931).