234

717 P.2d 913

In the Matter of Oscar A. STROBEL,
Inter Vivos Trust:

Grace E. GREENWOOD, a single
person, Third Party
Plaintiff-Appellee,

Oscar A. Strobel, III, Real Party in
Interest-Appellee,

v.

Marshall L. PETERSON and Jane Doe
Peterson, husband and wife, Third
Party Defendants-Appellants.

No. 1 CA–CIV 6770.

Court of Appeals of Arizona,
Division 1, Department C.

May 23, 1985.

Duecy, Moore, Robinson & Bennett by
William F. Bennett, Scottsdale, for third
party plaintiff-appellee.

Lewis and Roca by John P. Frank,
Charles Crehore, Susan M. Freeman, Jo-
seph S. Jackson, Phoenix, for real party in
interest-appellee.

Gust, Rosenfeld, Divelbess & Henderson
by Richard A. Segal, H. Jay Platt, Phoenix,
for third party defendants-appellants.

## OPINION

EUBANK, Judge.

This appeal questions whether a surviv-
ing wife properly exercised her power of
appointment over the proceeds of a trust in
her will. The trial court, following an
A.R.S. § 14–7201 proceeding construing
the terms of Oscar A. Strobel's *inter vivos*
(living) trust, determined that the power of
appointment granted therein was not prop-
erly exercised by Oscar's wife because her
will did not make "specific reference" to
the trust as required.

The facts are not in dispute and are
stated in detail in the findings made by the
trial judge as follows:

1. This matter arises in connection
with the administration of an inter vivos
trust. This Court took jurisdiction of a
"Petition for Construction" of the trust
under A.R.S. § 14–7201. The underlying
circumstances are set forth in the para-
graphs following:

2. Oscar A. Strobel died on December
14, 1967. During his lifetime, he provid-
ed for two trusts, the first testamentary
and the second inter vivos. The testi-
mentary trust, dated November 20, 1965,
included a Trust "A" and a Trust "B".
Under the testamentary trust Strobel's
second wife, Willie Mae Strobel, was to
receive the income of both Trust "A" and
Trust "B" for her lifetime. Upon her
death, the Trust "B" (the remainder
trust) was to be held for the benefit of
the son of the first marriage, Oscar A.
Strobel, III, subject to an unrestricted
right of withdrawal. Willie Mae Strobel
had a power of appointment over Trust

"A" (the marital trust), the exercise of which could only be made by will and was further expressly conditioned on making specific reference to the will in the exercise of power. In default of the exercise of that power of appointment, upon the death of Oscar A. Strobel's wife, Willie Mae Strobel, the entire remaining principal of Trust A, or the part of such trust not effectively appointed, is to be added to and become a part of Trust B, to be held, administered, and disposed of in accordance with all the provisions of the said Will governing Trust B.

3. On December 30, 1966, Oscar A. Strobel created an inter vivos trust. The inter vivos trust created the same "A" and "B" pattern as the testamentary trust. The estate of Oscar A. Strobel was exhausted in payment of debts and estate taxes and therefore the testamentary trust created by the Last Will and Testament of Oscar A. Strobel, dated November 20, 1965, did not become funded and therefore never came into existence.

4. On December 6, 1974, after the death of her husband, Willie Mae Strobel executed a Will which had been prepared for her by Marshall Peterson, a Scottsdale, Arizona, attorney. This Will was submitted to probate in Cause No. P–124770 prior to the Petition for Construction, which is the subject of this case.

5. Willie Mae Strobel's Will contained two paragraphs relevant here. Paragraph Second is as follows:

"Under the terms of *the Will of my late husband, OSCAR A. STROBEL, which Will was dated November 20, 1965, a Trust was created for my benefit,* and under the provisions of such Trust, a portion of the estate of Mr. Strobel was set aside as a marital trust, and is designated by the Trust Department of the Valley National Bank of Arizona as Trust 6588A ... *Under the provisions of Paragraph D, page 4, of my deceased husband's Will, I am given a general power of appointment to dispose of, by Will, any or all of the prin-*

*cipal of Trust A,* together with any accrued and undistributed income thereon remaining at the time of my death, provided my Will makes specific reference to such general power of appointment. *Pursuant to such general power of appointment, I do hereby specifically* exercise the same, and do appoint all of Trust A to my estate to be disposed of under the provisions of this, my Last Will and Testament." (Emphasis supplied).

Paragraph Third of Willie Mae Strobel's Will provides:

"I give, devise and bequeath to my sister, GRACE GREENWOOD, everything I own, including all that I am entitled to receive, withdraw or dispose of from the Trust of my late husband, OSCAR A. STROBEL."

6. The Valley National Bank of Arizona ("VNB") was the Trustee under both of the trusts created by Oscar A. Strobel and was the Personal Representative under the Will of Willie Mae Strobel.

7. The Valley National Bank of Arizona, as Trustee of the Oscar A. Strobel Inter Vivos Trust dated December 30, 1966, filed the instant proceedings for the purpose of obtaining instructions from the Court with respect to the disposition of the assets held under Trust A of the said Trust. The petition was filed by Marshall Peterson as attorney for the VNB initially and he thereafter withdrew and other counsel were substituted. All interested parties appeared in the action and were represented by counsel in these proceedings.

\*　　\*　　\*　　\*　　\*　　\*

10. After discovery, Marshall Peterson and Oscar A. Strobel, III filed their respective motions for summary judgment. Grace E. Greenwood filed her motion for summary judgment and cross motions for summary judgment against Marshall L. Peterson and Oscar A. Strobel, III.

11. There are no controverted issues of fact which impede consideration of

Strobel's motion for summary judgment. It was the intent of Willie Mae Strobel to exercise her power of appointment, in effect, in favor of her sister. Apart from the question of intent, other possible factual questions were acknowledged at oral argument by Greenwood to exist between Greenwood and Peterson so that these issues cannot be determined on the basis of the record as it presently stands.

On the basis of these facts, the trial judge made the following conclusions of law:

12. This Court has jurisdiction to determine the questions presented under A.R.S. § 14–7201.

13. The power of appointment under the inter vivos trust of Oscar A. Strobel dated December 30, 1966, was not exercised by the Will of Willie Mae Strobel dated December 6, 1974. Oscar A. Strobel, III, is therefore entitled to summary judgment, and The Valley National Bank of Arizona, as Trustee of the Oscar A. Strobel Inter Vivos Trust dated December 30, 1966, should be instructed to proceed pursuant to paragraph (B) of Article Fifth of said Trust Agreement, on the basis that the power of appointment granted to Willie Mae Strobel was not exercised.

14. It necessarily follows that the motion of respondent, Grace Greenwood, must be denied.

15. There being factual questions raised by the parties other than the issue of the intent of the deceased, the motions relating to the third party complaint are denied.

Judgment with Rule 54(b), Arizona Rules of Civil Procedure, language was entered on July 23, 1982 as a part of the above findings of fact and conclusions of law. The judgment states, in part:

16. The petition of the VNB for construction of trust is granted and The Valley National Bank of Arizona, as Trustee of the Oscar A. Strobel Inter Vivos Trust dated December 30, 1966 is hereby instructed to proceed with the administration of the Trust A thereunder, as hereinafter set forth.

17. The inter vivos trust is construed to require that an exercise of the power of appointment must make specific reference to the exercise of the power of appointment created by that trust, and not to any other power of appointment which may have been created at some other time, under some other document.

18. It is herewith declared and adjudged that the Will of Willie Mae Strobel dated December 6, 1974, did not exercise the power of appointment under the inter vivos trust of Oscar A. Strobel of December 30, 1966.

19. It is further declared, adjudged and decreed that, no power of appointment having been exercised under the inter vivos trust, the property included within that portion of the trust known as Trust A shall be added to Trust B and administered under the provisions of the December 30, 1966 Inter Vivos Trust of Oscar A. Strobel with respect to the said Trust B.

Appellant Peterson, the attorney who drafted Willie Mae Strobel's will, appeals from the judgment and contends that the judgment should be reversed and the trial court directed to enter a judgment finding that Willie Mae Strobel's will effectively exercised her power of appointment over portion "A" of the *inter vivos* trust.

Under an A.R.S. § 14–7201, *et seq.* proceeding, (Uniform Probate Code § 7–201, *et seq.*) the superior court, acting as the probate court, has exclusive jurisdiction of proceedings concerning the internal affairs of trusts, including proceedings, such as this one, to declare the rights involving trustees and beneficiaries of trusts by construction of the trust instruments. A.R.S. § 14–7201(A)(3). Such a determination is appealable, pursuant to A.R.S. § 12–2101(J), to this court. Our standard of review is to determine whether the record and evidence substantially support the trial court's judgment. *In re Guardianship of Sears*, 44 Ariz. 408, 38 P.2d 308 (1934).

The pertinent provisions of the *inter vivos* Trust A are as follows:

*FIFTH:* Distribution of Trust Funds in Trust A

(A). Upon the death of the wife, the entire amount remaining in Trust A (including net income accrued or collected but not distributed) shall be distributed to such person or persons, or to the estate of the wife, in such manner, including free of trust, and in such proportions as the wife may designate and appoint *in her Last Will by specific reference to and exercise of this power.* The Trustee may rely upon any instrument admitted to probate in any jurisdiction as the Last Will of the wife, and if it has no written notice of the existence of such a Will within three (3) months after her death it may presume that she did not exercise this general power of appointment, and the Trustee shall be protected in acting in accordance with such presumption, this provision being intended to expedite the prompt and efficient administration of the trusts, and not intended to limit, cut off, diminish or qualify the wife's power of appointment or the right of any person interested to pursue the property affected by the proper exercise of such power irrespective of the time or place of probate of the Will exercising such power.

(B). Any part of all of Trust A which remains undistributed under the preceding provisions of this Article shall be added to Trust B and administered under the provisions hereof relating thereto.

(Emphasis added).

Turning to the record, we find the *inter vivos* trust has been assigned several different numerical designations since its creation, and at one time Valley National Bank referenced the marital trust portion thereof as "21–6588A." Attorney Peterson testified in his deposition that when he prepared Mrs. Strobel's will he referenced a copy of Oscar A. Strobel's will but had forgotten about the *inter vivos* trust. Thus, in drafting the testamentary instrument he referred to the testamentary power of appointment rather than to the power afforded the testator by the *inter vivos* trust. He did, however, refer to "Trust 6588 A" which is a part of the number for the *inter vivos* trust.

## THE LAW

The donor of a power of appointment may effectively restrict the manner in which it may be exercised by imposing particular conditions and requirements thereupon, including the requirement that the donative instrument be specifically referenced in any exercise of the power. *In re Estate of Smith,* 41 Colo.App. 366, 585 P.2d 319, 321 (1978); *Holzbach v. United Virginia Bank,* 216 Va. 482, 219 S.E.2d 868, 871 (1975); *Stewart v. United States,* 512 F.2d 269, 274 (5th Cir.1975). Thus it has been held that

[t]he donee of a power is simply a trustee for the donor to carry into effect the authority conferred by the power. In exercising the power, he must observe strictly its provisions and limitations. The estate appointed is that of the donor, ... and in making the appointment the intention of the donor, and not that of the donee, must prevail.

. . . . .

... The donor of a power, inasmuch as he is disposing of his own property, may prescribe whatever ceremonies he pleases for its execution; and although these may be perfectly arbitrary, yet, being required by the creator of the power, they can be satisfied only by a strictly literal and precise performance of them.

(Emphasis and citation omitted.) *In Re Estate of Schede,* 426 Pa. 93, 231 A.2d 135, 137 (1967). *See also Gibson v. Security Trust Co.,* 201 F.2d 573, 575 (4th Cir.1953).

Therefore, the question of whether a power of appointment has been validly exercised does not depend on the intent of the donee but on whether the power was exercised in the manner prescribed by the donor. "Where the controlling requirements are clearly stated ... the donee's intent is irrelevant if she fails to comply with those requirements." *Estate of Smith, supra*

585 P.2d at 321. "The test is not whether the donee intended to appoint but rather whether donee *manifested* her intent in the manner prescribed by donor...." *Holzbach, supra* 219 S.E.2d at 871.

## ANALYSIS

Oscar Strobel, the trust grantor, clearly specified in the instrument the manner in which his wife's power of appointment was to be exercised, to wit, "in her Last Will by specific reference to and exercise of this power." While it is undisputed that Willie Mae Strobel intended to exercise her power of appointment over the corpus of the trust from which she was receiving monetary benefit, her will makes no specific reference to the power of appointment afforded her by the *inter vivos* trust agreement. Instead, the will specifically references in great detail her other power of appointment—the one granted to her under paragraph (D) of her husband's will.

Appellant Peterson contends that the grantor did not intend rigid compliance with the instrument's specifications for exercise of the power but merely sought to prevent his wife from inadvertently exercising her power of appointment. While the basic rule for the interpretation of trusts is to ascertain the intent of the settlor, this intent must be ascertained "from the contents within the four corners of the instrument." *In Re Estate of Gardiner*, 5 Ariz.App. 239, 240, 425 P.2d 427, 428 (1967). The sole basis for Peterson's argument, drawn from within the confines of the text of the instrument, is the following language contained within Article FIFTH (A):

... this provision being intended to expedite the prompt and efficient administration of the trusts, and not intended to limit, cut off, diminish or qualify the wife's power of appointment....

In our opinion appellant has taken this passage out of context, seeking to utilize it in a manner not intended by the grantor. A reading of the full text of Article FIFTH (A) reveals that the quoted phrase is a mere portion of a provision designed to protect the trustee in its distribution of the trust assets upon Mrs. Strobel's death. To construe the language relied upon by appellant as modifying the requirements for exercise of the power would both work a distortion of the clear language of the administrative provision and render a nullity the grantor's explicit prescription for exercise of the power of appointment.

It is argued alternatively that Mrs. Strobel exercised her power of appointment by Article THIRD of her will in which she bequeaths her entire estate to his sister "including all that I am entitled to receive, withdraw or dispose of from the Trust of my late husband...." Appellant relies upon A.R.S. § 14–2610 in support of this assertion. The statute provides:

A general residuary clause in a will, or a will making general disposition of all of the testator's property, does not exercise a power of appointment held by the testator *unless specific reference is made to the power or there is some other indication of intention to include the property subject to the power.*

(Emphasis added.) However, in determining whether the testator intended to exercise the power, the instrument must be considered as a whole. *In re Estate of Smith*, 119 Ariz. 293, 295, 580 P.2d 754, 756 (App.1978). Thus, Article THIRD must be construed in the context of the entire will. Examination of the instrument reveals that, while Article SECOND attempts to exercise a power of appointment in favor of the testator's estate, Article THIRD merely bequeaths to Greenwood the property already appointed. Furthermore, even assuming *arguendo* that Article THIRD constitutes an attempt to exercise the power, it does not make "specific reference" to the power as is required by the donor. The official comments to Uniform Probate Code § 2–610, from which A.R.S. § 14–2610 was adopted, state that the statute is inapplicable "if the donor had

conditioned exercise on an express reference to the original creating instrument."

The testator's reference to her power of appointment under her husband's will coupled with the bank's reference number for the *inter vivos* trust arguably gives rise to a latent ambiguity which would permit consideration of parol evidence for the purpose of explaining it. *In re Estate of Smith, supra,* at 296. However, extrinsic evidence may be considered "only to show what the testator meant by what he said, not to show what he intended to say." *In re Estate of Blacksill,* 124 Ariz. 130, 132, 602 P.2d 511 (App.1979); *In re Estate of Smith, supra* 119 Ariz. at 296, 580 P.2d 754; *Herzog v. Title Guarantee & Trust Co.,* 177 N.Y. 86, 69 N.E. 283 (1903). Furthermore, the court may not utilize parol evidence, such as the testator's oral or written instructions or other expressions of intention, to reform the draftsman's error. *In re Estate of Blacksill, supra* 124 Ariz. at 132, 602 P.2d 511; *see also* 9 *Wigmore Evidence* § 2471 at 241 (Chadbourn rev. 1981).

## CONCLUSION

The record reveals that Mrs. Strobel's will accurately described and properly exercised a power of appointment that she did, in fact, have. Parol evidence may not be considered to show that she really intended to exercise her power under the *inter vivos* trust or that the will inadvertently misdescribed the power to be exercised. For:

> [N]o matter how clearly a testator's wish to make a particular disposition may appear from sources outside the will, a court cannot give it effect unless the words written into the will effect that disposition or are reasonably susceptible to the interpretation that they do.

*In Re Estate of Kerr,* 433 F.2d 479, 490 (D.C. Cir.1970).

The judgment of the superior court is affirmed.

JACOBSON, C.J., and OGG, J., concur.