Argued October 7, 1968, affirmed May 16, 1969

ANDREWS, *Plaintiff and respondent, v.*
HOCHMUTH, *Appellant,*
and
MILLER, *Defendant and Respondent.*
454 P2d 636

*Wm. S. McLennan*, Portland, argued the cause for appellant. With him on the brief were McLennan & Muller, Portland.

*Leonard D. Alley*, Portland, argued the cause for defendant and respondent. With him on the brief was Walter D. Alley, Portland.

George C. Reinmiller and Cake, Jaureguy, Hardy, Buttler & McEwen, Portland, filed a brief for Equitable Savings & Loan Association, amicus curiae.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

The sole question in this declaratory suit is whether

a designated joint owner of a savings account takes the proceeds subject to a trust or free of the trust.

The facts are not in dispute. On March 1, 1957, Marguerite M. Dunn created from her own funds an account with Equitable Savings & Loan Association, designating ownership of the account as follows:

"Marguerite M. Dunn or Ruth Hochmuth, or the survivor thereof, trustee for Lisa Miller."

On May 22, 1963, Marguerite M. Dunn died without having expressed an intent to change the status of the savings account. According to the terms of the deposit, Ruth Hochmuth, as survivor, became entitled to receive the balance remaining in the account on the date of Marguerite M. Dunn's death. The trial court held that the rights of Ruth Hochmuth in the fund should be impressed with a trust in favor of Lisa Miller, and Ruth Hochmuth appeals.

The trial court considered the fact that the depositor had created eleven separate joint accounts, each having the incidents of survivorship. There was evidence that these accounts were intended to benefit the depositor's survivors after her death. One of the accounts so created was for the benefit of Ruth Hochmuth as sole survivor with no suggestion of a trust. The account now in controversy appears to have been intended to benefit a relative who was eleven years old at the time the account was created. All other survivors were adults.

■ Without the quoted words, "trustee for Lisa Miller," there would be no question but that, upon the death of the depositor, the ownership of the account would vest in the survivor. See *Greenwood v. Beeson,* 253 Or 318, 454 P2d 633 (1969).

The rights of persons who claim interests in joint savings accounts after the death of one of the owners are not always necessarily controlled by the language of the signature cards used in opening the account. *Greenwood v. Beeson,* supra. These documents are prepared by and for the savings institutions. Such papers are prepared for other purposes than spelling out the rights of individuals who may later claim to have an interest in the account. *Jarkieh v. Badagliacco,* 75 Cal App 2d 505, 170 P2d 994 (1946); and Note, 26 Or L Rev 114 (1947). A bank-protecting statute may, in some circumstances, have some bearing on the rights of depositors. See ORS 722.315. But it is not necessary for us to decide in this case the effect of ORS 722.315 on hypothetical cases. The statute and the signature cards permit the savings institution to minimize the hazards of litigation, and, under most circumstances, the institution is held harmless when it pays over the money according to the terms of the deposit. ORS 722.315.

The controversy in the case at bar concerns the savings institution only indirectly as a stakeholder. The rival claimants to the fund agree that the institution had the right to pay to Ruth Hochmuth. The issue is whether the funds so paid are to be impressed with a trust.

■■ In determining whether Ruth Hochmuth takes as a sole owner or as a fiduciary charged with a trust, the guiding principle is that the court should give effect to the intent of the person creating the fund if it is possible to learn from competent evidence what that intent was. *Beach v. Holland,* 172 Or 396, 142 P2d 990, 149 ALR 866 (1943). Where the written evidence is ambiguous, as it is in the case at bar, resort may be had to extrinsic evidence to determine the intent of

the parties. *Holbrook v. Hendricks' Estate*, 175 Or 159, 169, 152 P2d 573 (1944); and see Annotation, 33 ALR2d 569 (1954).

■ No particular form of words is required to create a trust, and whether one exists is to be ascertained from the intention of the party as manifested by the words used and the surrounding circumstances. *Allen v. Hendrick*, 104 Or 202, 206 P 733 (1922).

■ While the intent to impose a fiduciary duty upon Ruth Hochmuth could have been spelled out with more clarity, we believe the trial court correctly evaluated the evidence of the depositor's intent, and that the decree should be affirmed.

Affirmed.