*[899]
 
 THORNTON, J.
 

 This is a probate appeal involving a dispute over (1) a $3,500 joint savings account which was purportedly created at the decedent’s direction shortly before his death and naming respondent as the co-owner of the account, and (2) a $2,335 claim by respondent and his wife against the estate for personal services rendered to the decedent, chiefly during his last illness.
 

 Following decedent’s death respondent, who is also the executor of decedent’s will and the duly appointed personal representative of the estate, claimed that he was the rightful owner of the joint savings account.
 

 Petitioner is the decedent’s brother and one of the devisees under the will.. He claims that the joint account rightfully belongs to the estate rather than to respondent, and that the claim for personal services was without merit. The issues arose when petitioner filed an objection to respondent’s final account as personal representative.
 

 The trial court ruled that the subject account passed to the respondent by gift but denied the claim for personal services. Petitioner appeals. There was no cross-appeal by respondent.
 

 The essential facts are as follows:
 

 Respondent was the decedent’s stepnephew. Respondent and decedent were personal friends of some 20 years. When decedent became terminally ill he asked respondent and his wife to perform certain personal services for him, including making trips to Boise and Grants Pass. He also asked them to look after his house in Bums. Respondent and his wife gave a substantial amount of personal care and attention to decedent both in the hospital and at their home during decedent’s last illness.
 

 Shortly before his death decedent received a check in the sum of $3,500.13 as his distributive share of his half-brother’s estate. Respondent and his wife testified
 
 *[900]
 
 that decedent told respondent to put the money into a joint savings account, saying, "* * * I can maybe draw on it if I get well.” They testified further that when respondent returned from the bank some 40 minutes later, the decedent refused to sign the signature card for the account and told respondent and his wife, "that [the account] is yours.” This event occurred just two days prior to decedent’s death.
 

 The signature card did not expressly provide for a right of survivorship.
 

 Following decedent’s death the respondent filed a claim against the estate for the personal services mentioned above, seeking $2,335.20 on account of those services.
 

 Petitioner offered no evidence at the trial, limiting his efforts to cross-examination of respondent and his wife and oral argument directed at the legal insufficiencies of respondent’s contentions.
 

 Normally, transactions and claims such as those found here would require the closest scrutiny, since the potential for abuse and overreaching is great. However, petitioner does not claim fraud, duress or undue influence, or that respondent and his wife otherwise initiated or procured the gift in issue.
 

 At the conclusion of the trial the court denied the claim of respondent and his wife in the amount of $2,335.20 for the personal services, but held that respondent was entitled to the entire $3,500 in the joint savings account.
 

 The court, in explaining its reasoning, said:
 

 "* * * What I’m going to do is award to the Bosch’s the sum of the gift of $3,500.13 which in this Court’s view was simply the deceased, in essence, trying to take care of the debts that he owed to them * *
 

 Claims by a personal representative against the estate of a decedent are covered by ORS 115.105, which provides:
 

 "A claim of a personal representative shall be filed with the clerk Of the court within the time required by
 
 *[901]
 
 law for presentment of claims. Upon application by the personal representative or by any interested person the claim may be considered by the court on the hearing of the final account of the personal representative or prior to the hearing of the final account upon notice to interested persons.”
 

 The probate code does not specify the procedure which is to be followed at the hearing on the objections to the final account on a claim of this type.
 
 See,
 
 ORS 116.103. However other sections of the code provide that probate proceedings are generally equitable in nature, including de novo appellate review.
 
 See,
 
 ORS 111.095, 111.105 and 111.205.
 

 Contrary to the view expressed by respondent, the hearing on objections to the final account is tried as a suit in equity rather than an action at law, and that on appeal the matter is heard de novo. ORS 111.105, 19.125(3).
 
 See, Johnson v. Johnson,
 
 27 Or App 461, 556 P2d 969 (1976), Sup Ct
 
 review denied
 
 (1977).
 

 Accordingly, we have examined the entire record de novo. Having done so we reach the same conclusion as did the trial judge, namely, that the decedent intended to, and did, make a valid gift of the $3,500 savings account to respondent and his wife in appreciation for the personal services which they rendered. To allow also the claim in issue would in effect be double reimbursement and was correctly denied by the trial court.
 

 Shields v. U S. Nat’l Bank/Shields,
 
 266 Or 562, 514 P2d 348 (1973), and similar authorities relied upon by petitioner, are inapposite here in view of our conclusion that the transfer of the money in the savings account to respondent was intended by decedent as a gift to respondent and his wife in appreciation of the personal services previously rendered.
 
 [1]
 

 Affirmed.
 

 [1]
 

 For an illuminating exposition of current Oregon law pertaining to joint bank accounts,
 
 see, Greenwood v. Beeson,
 
 253 Or 318, 454 P2d 633 (1969).
 
 Accord: Johnson v. Johnson,
 
 27 Or App 461, 556 P2d 969 (1976), Sup Ct
 
 review denied
 
 (1977).